Trujillo-Sanchez v. Merrick Garland Good morning, Your Honors, and may it please the Court. My name is Daniel Tillman, and I represent the Petitioner, José Trujillo-Sanchez. The Petitioner raises four issues for this Court to consider today. First, whether the reinstatement of his 1999 deportation order was proper in light of his admission to the United States. Second, whether the Department of Homeland Security has the authority. These are the issues you raise, but before we can get there, we have a jurisdictional question, which is raised in the Attorney General's brief, which is how can we engage in direct review of a decision by an immigration judge? I'm sorry, Your Honor, could you rephrase the question? How can we engage in direct review of a decision by an immigration judge? Thank you, Your Honor. The way that the immigration judge's decision comes into play in this case is in the denial of due process. No, look, what is the statute which authorizes a court of appeals to review a decision of an immigration judge? Your Honor, what we're asking the Court to review is the reinstatement order itself. Yes, but it's not a decision by the Board of Immigration Appeals. Correct, Your Honor. Right? 8 U.S.C. 1252, the statute that gives us jurisdiction in immigration cases, gives the court of appeals jurisdiction in immigration cases, talks about reviewing decisions of the Board of Immigration Appeals. Yes, Your Honor, but the reinstatement order itself is subject to direct review by the Circuit Court. Why? What statute authorizes a U.S. Court of Appeals to review a reinstated removal order rather than a decision of the Board of Immigration Appeals? That's the question raised by the Attorney General's brief, and they rely on a new decision by the Second Circuit dismissing a petition in the same kind of circumstances we find here. Your Honor, our position is that this court has jurisdiction under 8 U.S.C. 1252. 1252 talks about reviewing decisions of the Board of Immigration Appeals, which this is not. Yes, Your Honor. Correct, Your Honor. And I apologize, Your Honor, I don't have the citation on me directly, but I was... We would have expected you to read the Attorney General's brief... I did, Your Honor. ...particularly when the Attorney General says we don't have jurisdiction. Yes, Your Honor. I apologize, I'm just a little scattered. Your Honors, is Your Honor referring to, I'm looking for the Second Circuit case that they... The Bhaktibhai Patel v. Garland case from April of this year. Thank you, Your Honor, and I apologize to the Court, I did not catch that, I suppose, in preparation, but should the Court determine that it does have jurisdiction to review this matter, I would like to proceed to the merits of the arguments with the Court's permission. Well, all right, if we're going to go on to the merits, Mr. Thoman, you argue that the petitioner didn't illegally enter the United States because he did so by showing his unexpired permanent resident card, but does the petitioner contend that the permanent resident card was still valid and has not been provoked? No, Your Honor. Or that he was not aware that it was no longer valid? In other words, how is it, how would that be different from entering with, let us say, a counterfeit permanent resident card? Thank you, Your Honor, the petitioner is not arguing that. Rather, the petitioner is asking that this Court revisit its decision in Mendoza v. Sessions relating to this issue. The arguments are very similar to those in that case, but there are a couple of reasons that we think warrant the Court to revisit that issue. So before you do that, you agree we would have to overrule Mendoza v. Sessions to find for you on this particular issue? Yes, Your Honor. The differences are two. One is that the discussion in Mendoza did not consider, for one thing, the Board's decision in the matter of Key Lantan did more than what this Court found in that case. The decision in Key Lantan specifically said that the petitioner there had, I'm sorry, the applicant there had made a lawful entry, not just that they were admissible. The decision purports to limit itself to the adjustment of status context and the issue of inadmissibility, but that cannot be reconciled directly with the various other provisions that use the terms interchangeably, such as 8 U.S.C. 1101 A13a, 1182 A6 A1, and even 1231 A5, the reinstatement statute. The Court in Mendoza considered also similar arguments made in the Tenth Circuit in Cordova Soto v. Holder. In that case, just as this Court in Mendoza looked at 8 U.S.C. 1326 to interpret the legality of the entry, but that statute is broader in that it doesn't just limit itself to the 1231 A5 does, that includes attempting to enter, entering, and also remaining in the United States. So, I think that those are distinctions that should be considered by the Court in finding that the term actually somebody making an entry that would be considered lawful under board precedent and various other statutory provisions should not only in the context of reinstatement be insufficient. So, that's what we hope that this Court will revisit its decision in Mendoza. Next, we argue whether the, that the DHS does not have the authority under 8 U.S.C. 1231 A5 to reinstate deportation orders. This is because the statute refers, confers that authority on the Attorney General, and yes, when the Department of Homeland Security was created, it assumed many of the duties previously delegated to the Attorney General, but 8 U.S.C. 1103 A1 specifically retains, it says that the Attorney General preserves powers, functions, and duties conferred upon the Attorney General, and the issuance of orders is a function traditionally retained by immigration judges. So, the DHS does not actually have the delegated authority to issue a reinstatement order. It may execute an order that's been reinstated. It may make those determinations, but it doesn't have the authority under the statute to, to issue that order. The respondent's brief cites VIA verse BAR, and the regulation 241.8, but that's the very regulation that, that we are challenging, essentially saying that it is ultraviarious because the department doesn't have that authority, and the issue really didn't develop that way in VIA v. BAR. In that case, the court essentially took it as a given, and I think that the, I don't know if the parties argued it, but the fact that 241.8 was ultraviarious. In that case, they focused, the argument was more focused on the invalidity of the underlying order, not the lack of authority by the department. Finally, well, I'll skip over the, the due process argument. Essentially, that's going to turn largely on whether it was proper in the first place for the petitioner to be in reinstatement proceedings. As far as the manner in which the hearing or the interview was conducted, that's our final issue, is whether the asylum office and the immigration judge incorrectly found that he did not establish a reasonable possibility that he would be persecuted in Mexico. In doing so, the, they essentially applied incorrect standards. The asylum officer repeatedly alluded to specific and persuasive evidence, which is not something that's required under the regulation for a reasonable fear interview. And the immigration judge incorrectly applied a matter of CA from the Board of Immigration Appeals in finding that the petitioner had not established nexus. The reasonable fear interview is supposed to be a threshold screening to see whether this is actually potentially a meritorious claim. And it was treated here like a merits adjudication of that claim. I'd like to reserve the remainder of my time if there are no additional questions for rebuttal. Thank you, Your Honors. Certainly, Counsel. Ms. Pratt. Good morning, Your Honors. May it please the Court. Cherise Pratt for the respondent, Merrick Garland. The government does believe the court has jurisdiction. They just, we just raised that issue that the Second Circuit decided otherwise. But to answer your question, there is no statute that specifically addresses judicial review of reasonable fear determinations. It's a regulatory creation. And so the government believes that you have authority to review the immigration judges One might think, if this is a regulatory creation and it's an administrative decision, that review would be under the Administrative Procedure Act in district court rather than in the U.S. Court of Appeals. Isn't that perfectly normal for when an agency makes a decision and there's no special statute routing it straight to the Court of Appeals as opposed to the district court? But in this case, the claims may only be heard in a petition for review. I'm sorry, could you raise your voice, please? It's a big room, and you'll find that that microphone records, but it doesn't, it does not boost your volume. So for these claims, they can only be heard in a petition for review. Why? Because he has a final removal order. He has a final removal order from 20-some-odd years ago, and the statute says that can't be contested at all. Correct. Right? What he's complaining about, well, he tries to complain about that, but that's going nowhere. What he's complaining about is the reasonable fear determination. Yes, and we believe, because of the zipper clause, we believe that his claims can only be heard in the Court of Appeals. But I don't understand why. Right? The normal way in which decisions of administrative agencies are reviewed is by filing a lawsuit in a district court. Right? The Immigration and Nationality Act says you can't review them by filing a petition for a writ of habeas corpus in district court. But this seems to be a normal administrative review process. Okay. It's perfectly clear that we need further briefing in this case. Right. We need both sides. I will give both sides 14 days to file briefs addressing the jurisdiction of the Seventh Circuit to hear a direct petition for review of an immigration judge's order without going through either the Board of Immigration Appeals or a U.S. district court. Yes, Your Honor. We believe that the remainder of his claims are foreclosed by the circuit precedent. So, if you have no further questions, I would rest on the brief with the remainder of . . . I have a question, Ms. Pratt. I have a question. Is there any mechanism at the border entry that's designed to determine whether a permanent resident card has been revoked? I would not know the answer to that question. I mean, I believe that they run . . . Sometimes they run things through systems, but I really don't know the answer. I would have to investigate that. And I do have a . . . Thank you. I do have a second question, and that is, would the petitioner know that his permanent resident card, though unexpired, was nevertheless invalid based on his . . . on the deportation? And how would that have been communicated to him? Yes, he knew. He even said that he had no other alternative, and that's why he used it to come into the United States. He and his counsel admitted they knew it was invalid, but he had no other alternative. How is that communicated to the petitioner? So, well, we're not looking at the, you know, original 1999 removal order, and so . . . Well, I know. We don't know how all of that happened, and we're just looking at whether the reinstatement of the removal order was proper. Is there a procedure where they are originally deported where they're told you cannot reenter unless expressly authorized by the Attorney General? Is that given to them when they're originally deported? Well, it's on the order, the removal order. It tells the consequences, 20 years of imprisonment, the $250,000 fine. Mm-hmm. Yes. Okay. I have one more. I'm sorry, Judge Rovner. Are you done with your line of questioning? No, no. I'm going to go back real quickly to the immigration judge's order here. So the asylum officer denied the CAT relief, and then it went to the immigration judge for a preliminary review. Who affirmed what the asylum officer had done. After the immigration judge made that determination, is there any method within the administration or within the agency to have the immigration judge's ruling reviewed? No, because the immigration judge concurred with the asylum officer's determination. So that's the end of the avenue there. Yes. So if they can't appeal to this court, then it would end with the immigration judge and there'd be no avenue. Okay. Thank you. And if there are no further questions, I'll rest on the briefs. Mm-hmm. Thank you. Mr. Tomon, you have 20 seconds. Thank you, Your Honor, and thank you for the opportunity to debrief that issue further. Just one clarification, that the court has no additional questions. The immigration judge did not actually make a CAT determination because that's part of our argument is that it's a threshold screening to see whether he'll be allowed to present. Thank you, Your Honors. Mm-hmm. All right, and to reiterate, parties have 14 days to file supplemental statements about our jurisdiction in a case where neither the district court nor the Board of Immigration Appeals has rendered a final order of removal. Okay. Case number four.